AMERICAN POLICYHOLDERS' INSURANCE COMPANY, A CORPORATION, PLAINTIFF, v. WILEY MC CLINTON, WILEY MC CLINTON, JR., ESTATE OF GLADYS MEDINA, NICHOLAS MEDINA, ADMINISTRATOR OF THE ESTATE OF GLADYS MEDINA AND AS ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF GLADYS MEDINA, CARMEN DE LEON, ROSALIE VELASQUEZ LAMBERTY, RAPPAPORT OIL CO., ABRAHAM BLUMSTEIN AND STANLEY BLUMSTEIN, T/A SLOAN & COMPANY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 21, 1968.

*Mr. Alfred F. Carolonza, Jr.* for plaintiff (*Mr. Joseph S. Montalbano,* attorney).

*Mr. John J. Smyth* for defendants Wiley McClinton and Wiley McClinton, Jr.

*Mr. Allan J. Naishuler* for defendant Rosalie Velasquez Lamberty (*Messrs. Greenstone & Greenstone,* attorneys).

*Mr. Bartholomew T. Zanelli* for defendants Abraham Blumstein and Stanley Blumstein, T/A SLOAN & COMPANY (*Messrs. Stryker, Tams & Dill,* attorneys).

MINTZ, J. S. C. This cause was submitted for determination upon a stipulation of facts read into the record at the final hearing. In addition thereto exhibits were introduced into evidence, briefs were submitted and oral argument was heard. Some of the named defendants did not appear at the final hearing but have agreed to abide by the judgment of the court.

Defendant Wiley McClinton was issued a Manufacturers' and Contractors' Liability Policy, MCS 5–1782, by plaintiff American Policyholders' Insurance Company for the one-year period beginning February 15, 1963. During such period Wiley McClinton was engaged in the plumbing business.

In April or May of 1963, the defendant Wiley McClinton installed a boiler at the premises of Crest Jewelry Company, 160 Mt. Pleasant Avenue, Newark, N. J. On November 4, 1963 Wiley McClinton, Jr., who was apparently employed by and working for his father, changed the thermostat on the boiler previously installed by his father. Sometime later the same day, after the thermostat had been changed, the boiler exploded causing personal injury to the employees of Crest Jewelry Company. A number of suits in the Law

Division arose out of these events, Wiley McClinton, Sr. and his son both being named as defendants.

Following plaintiff's timely notice of the accident and its conduct of an investigation, plaintiff disclaimed liabilty on the two grounds that the insurance purchased under Policy MCS 5–1782 did not afford coverage for "Products Liability" or "Completed Operations," and that another provision expressly excluded this kind of accident from the "Premises-Operations" coverage of said policy. Consequently, plaintiff believes it has no duty under the policy to defend the McClintons in the Law Division actions.

This declaratory judgment action is brought to determine whether or not plaintiff is obligated to defend Wiley McClinton and Wiley McClinton, Jr. in the various Law Division actions instituted against them, and whether or not the policy affords coverage to the McClintons for any liability which may arise out of the accident of November 4, 1963.

The "Declarations" appear on the front page of this standard form "Manufacturers' and Contractors' Policy" and include a number of sub-headings entitled "Item[s]." Item 1 contains the name of the insured, Wiley McClinton, and his address. Item 3 reads:

> *"The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges.* The limit of the company's liability against each such coverage and division shall be as stated herein, subject to all the terms of this policy having reference thereto." (Emphasis supplied).

| ADVANCE PREMIUMS | LIMITS OF LIABILITY | | DIVISIONS | COVERAGES |
|---|---|---|---|---|
| $ 18.84 | $ 10,000 | each person | 1. Premises—Operations | |
| $ | $ 20,000 | each accident | 2. Elevators | |
| $ | $ | aggregate | 3. Independent Contractors | A Bodily Injury Liability |
| $ | (Aggregate applies to Div. 4 only) | | 4. Products—Completed Operations | |
| $ 29.88 | $ 5,000 | each accident | 1. Premises—Operations | |
| $ | $ | aggregate | 2. Elevators | |
| $ | (Aggregate applies to Divs. 1, 3 & 4) | | 3. Independent Contractors | B Property Damage Liability |
| $ | | | 4. Products—Completed Operations | |
| $ | $ | each person | 1. Premises—Operations | |
| $ | $ | each accident | 2. Elevators | C Medical Payments |
| | $ | each person | | |
| $ | $ | each accident | 1. Bodily Injury Liability | D Contractual Liability of a |
| | $ | each accident | | Specified Type |
| $ | $ | aggregate | 2. Property Damage Liability | |
| | | | | Form numbers of endorsements attached to policy at issue |
| $ 48.72 Total Advance Premium | | | | |

Advance premiums are listed opposite only Division 1 "Premises-Operations" for coverages A and B in said policy. "Premises-Operations" is defined under Division 1 of "Definition of Hazards" as "[t]he ownership, maintenance or use of premises *and all operations."* (Emphasis supplied).

"Products-Completed Operations" is defined under Division 4 of "Definition of Hazards" as follows:

"(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured * * *.
(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; * * *."

The Insuring Agreement obligates the insurer to pay all sums for bodily injury (Coverage A) and property damage (Coverage B) for which the insured shall become legally obligated to pay as damages sustained by any person caused by accident and arising out of the hazards therein defined, "subject to the limits of liability, exclusions, conditions or other terms of this policy * * *."

There is attached to the policy an endorsement containing four horizontal columnar divisions designated "Description of Hazards"; "Premium Bases"; "Rates" and "Advance Premiums." The "Rates" and "Advance Premiums" divisions are subdivided vertically into two vertical columns entitled "Coverage A" and "Coverage B". Vertically under the first heading appear five columns entitled respectively "(1) Premises-Operations"; "(2) Elevators"; "(3) Independent Contractors"; "(4) Products (Completed Operations)"; "(5) Contractual." Underneath "(1) Premises—Operations"

in the first horizontal column appears the following typewritten insertion:

"Plumbing N.O.C.—gas, steam, hot water or other pipe fitting—including house connections, shop and retail stores or display rooms."

To the right of this notation figures are inserted in the corresponding columns under Premium Bases, Rates and Advance Premiums. All the remaining columns on the endorsement relating to hazard descriptions and premium calculations contain no typewritten insertions.

Plaintiff's main argument is that an insured should receive coverage only for those risks for which he has purchased insurance. Since the front page and endorsement of the subject policy list premiums opposite the "Premises-Operations" hazard only, plaintiff contends its exposure is limited to such liability as might be imposed under that hazard in the policy. It is urged that a careful reading of Item 3 of the "Declarations" and the "Definition of Hazards" discloses that McClinton's coverage on accidents arising from plumbing operations is confined to those occurring during the doing of the act. Conversely, since McClinton did not buy coverage for "Products-Completed Operations," he is not insured for accidents occurring after the completion of his work.

Additionally, plaintiff urges that Exclusion (c) of the policy pares down the seemingly inclusive "all operations" coverage afforded by Division 1. Exclusion (c) states that:

"This policy does not apply:

\* \* \* \* \* \* \* \*

(c) under division 1 of the Definition of Hazards, and under coverage C, to (1) the Independent Contractors Hazard or (2) the Products-Completed Operations Hazard; \* \* \*."

On the other hand, defendants contend that the insurance policy should be liberally construed to find coverage, so that the reasonable expectations of the insured are realized.

Engaged in the plumbing business, the insured McClinton's purpose in obtaining the policy was to protect himself against liability for claims arising out of the conduct of this business. The insured, it is argued, did not intend to draw any distinction between explosions occurring in the course of his work and those occurring after the operation is completed, nor did he understand the policy to be so framed. The layman insured, it is urged, was justified in placing his reliance upon the Insuring Agreement and the definition of the hazard, "Premises-Operations," which purports to afford coverage for "all operations." Thus, defendants urge that the insured's reasonable expectations should not be frustrated and that the ambiguities in this complicated policy should be resolved against the insurance company.

In construing an insurance policy presumably the insurer intended to have the insured understand that in the event of loss he will be protected to the full extent that any fair interpretation will allow. *Danek v. Hommer,* 28 *N. J. Super.* 68, 76 *(App. Div.* 1953), affirmed *per curiam* 15 *N. J.* 573 (1954). An insured justifiably places heavy reliance on the knowledge and good faith of the company in the preparation of its varied and complex instruments and his reasonable expectations in the transaction may not justly be frustrated. Courts have properly molded governing interpretative principles with that uppermost in mind. Thus, courts have consistently construed policy terms strictly against the insurer and where several interpretations were permissible have chosen the one most favorable to the insured. *Allen v. Metropolitan Life Ins. Co.,* 44 *N. J.* 294 (1965) ; *Mazzilli v. Accident & Casualty Ins. Co. of Winterthur,* 35 *N. J.* 1 (1961). Moreover, in order to fulfill the insured's reasonable expectations he should not be subjected to technical encumbrances or to hidden pitfalls. *Gerhardt v. Continental Ins. Cos.,* 48 *N. J.* 291, 297 (1966). However, plaintiff contends that the instant policy, fairly interpreted, affords no coverage to the insured for liabilities arising from the accident of November 4, 1963. Since the insured paid

no premium for coverage against a "completed operation" accident, as is discernible from Item 3 in the policy's Declarations and the attached endorsement, the insurer is not liable to the insured under the policy. In *The Ohio Cas. Ins. Co. v. Flanagin,* 44 *N. J.* 504, 516–518 (1965), the court recognized that the format of the same policy's Declarations page gave notice to the insured that he was not covered for an "Independent Contractors" hazard, because he had not paid a premium for such exposure, although the "Premises-Operations" hazard for which he paid purported, as in the instant policy, to cover "all operations." Hence, it may be argued that no coverage should be afforded the insured in this case, unless the policy's differentiation between the active operations hazard and the completed operations hazard is considered so ambiguous as to thwart an insured's reasonable expectations, or the policy so framed is found inapplicable to the insured's business.

Defendants urge that the ruling in *McAllister v. Century Indemnity Co., Hartford, Conn.,* 24 *N. J. Super.* 289 (*App. Div.* 1953), affirmed *per curiam* 12 *N. J.* 395 (1953), supports their contention that the subject policy is vague and ambiguous, and that the policy should be construed so as to make the insurer liable for accidents arising from McClinton's operation, whether the accident occurred during or after the thermostat was changed.

In *McAllister, supra,* an excavator purchased liability insurance coverage for his business operations under a "Manufacturers' and Contractors' Liability Policy." He paid for coverage under Division 1, "Premises-Operations," the scope of the risk being defined in substantially the same broad manner as in the instant case. McAllister installed an oil tank under a sidewalk but failed to barricade properly a depression that remained after the work was completed. An accident subsequently occurred for which McAllister was sued. The insurer refused to defend the suit on behalf of McAllister, contending that the accident arose out of a "completed operation." The Appellate Division held that

both the exclusion clause and a purported definition of "completed operations" (inserted under the heading "Products") were vague and ambiguous and, in any event, an excavator's liability insurance was not offered under the heading "Products", notwithstanding the description of "completed operations" therein. The accident claim in question was deemed to be covered by Division 1, "Premises and Operations," of the Definition of Hazards as set forth in the policy. The court said:

> "The obvious object of the plaintiff in procuring this policy was indemnity against liability on tort claims growing from his operations as an excavator. * * * Except as particular provisions of the policy so curtail its scope that an ordinarily intelligent man would understand that the policy does not cover certain risks which come within its general scope—with that exception, the policy should be construed to cover all liability for accidents arising from plaintiff's operations, whether the accidents happened before or after the excavation job was finished. * * *" (at p. 294)

*McAllister, supra,* is factually distinguishable from the instant case. An excavator normally does not deal in "products" and his attention is not likely to be drawn to a hazard entitled "Products", or to its definition which purported to restrict his coverage. Also the ambiguous language of that definition could have led McAllister to believe that only "completed operations" in which products had been involved—not applicable to him—were excluded from the "all operations" coverage for which he had paid. As for McClinton, he is a plumber who as part of his trade deals in products, *e. g.* installation of a boiler and replacement of a thermostat. Furthermore, in the policy *sub judice,* the uninsured risk is entitled "Products-Completed Operations", thus putting the insured on notice that a premium is required in order to buy coverage for a "completed operation." Were a layman to pursue the notice offered in the instant policy's front page by the "Products-Completed Operations" heading and the prefatory language of Item 3, he would find that the definition of completed operations applied to his

activities and clarified his limited coverage under Division 1. A reading of that definition in the policy issued by plaintiff, in conjunction with Item 3, discloses to any plumber that unless he pays a premium charge for the "Products-Completed Operations" risk, he is not covered *inter alia* for operations "* * * whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed * * *" This precise clause was not present in the policy in *McAllister, supra.*

The reasoning behind *Gerhardt v. Continental Ins. Cos., supra,* is inapplicable to the case *sub judice.* There, the insured sought coverage under a comprehensive homeowner's policy for a workmen's compensation claim against him. The policy actually excluded workmen's compensation coverage, but the exclusion was found in fine print following broad statements of coverage. The exclusionary clause was neither conspicuous nor plain and clear. In the instant case limitations on plaintiff's "all operations" coverage can be discerned from a reading of the policy's front page. The court held in *Gerhardt, supra,* that the policy was prepared unilaterally by the insured and was sold on a mass basis as affording broad coverage to homeowners. If the carrier had acted fairly in excluding coverage of workmen's compensation claims, it would have given the insured clear notice to that effect on the face page of the policy or by a slip attached to the face of the policy. Having failed to do so, the insured was entitled to coverage. But see *Inductotherm Corp. v. New Jersey Mfrs. Cas. Ins. Co.,* 83 *N. J. Super.* 464 (*Law Div.* 1964). There the insurer was absolved from liability for personal injuries arising out of a defective product since the accident occurred away from the insured's premises and after the insured had completed operations. The court ruled that an exclusion provision in a comprehensive public liability policy for "Products Hazard" which included completed operations was effective despite its cutting away of the initially broad coverage offered the insured.

██ Generally, an insured is chargeable with knowledge of the contents of a policy, in the absence of fraud or unconscionable conduct on the part of the carrier. *Heake v. Atlantic Casualty Ins. Co.*, 15 *N. J.* 475, 483 (1954). And as observed, in *Merchants Indemnity Corp. v. Eggleston*, 37 *N. J.* 114, 121 (1962) "* * * This rule does not reflect a judicial belief that the average purchaser reads the contract in full or understands all that he reads. Rather the rule rests upon business utility." Nevertheless, in dealing with a layman unfamiliar with the subtleties of law and underwriting, the insurer should present a reasonably comprehensible policy to the insured, free of ambiguity.

█ The policy under consideration is complicated, but if an "ordinarily intelligent" insured had read it, paying particular attention to its front and most conspicuous page, he would have realized he was not covered for accidents arising from completed plumbing operations because he had not paid a premium for that hazard. In view of this determination, it is unnecessary to pass upon the legal effect of exclusion (c) in said policy.

Accordingly, plaintiff is not obligated to defend the McClintons in the several negligence actions instituted against them arising out of the accident of November 4, 1963, and coverage is not afforded them under the terms of said policy.

An appropriate form of judgment will be submitted, consented to as to form or to be settled on notice.