AMERICAN STATES INSURANCE CO., ET AL. *v.* AETNA LIFE & CASUALTY COMPANY

[No. 3-277A57. Filed August 21, 1978.]

300

*Mary E. Davis, Spahn, Atwater & Arko,* of Elkhart, for appellants American States Insurance Co., and Cheryl Craft Lantz; *DeDario, Katz & Rieckhoff,* of Elkhart, for appellants John Geerts and Everett Geerts d/b/a Geerts Brothers Greenhouse & Floral Shop, a/k/a John Geerts d/b/a Geerts Brothers Florist.

*John T. Mulvihill, Lawrence C. DiNardo, Thornburg, McGill, Deahl, Harman, Carey & Murray,* of South Bend, for appellee.

STATON, J. — In a prior action, Cheryl Craft Lantz and American States Insurance Co. recovered a judgment against John and Everett Geerts and the Geerts Brothers Greenhouse & Floral Shop for injuries and damages resulting from a fire in Lantz' home. The fire was caused by the ignition of a Christmas tree which had been flocked by Geerts. Geerts, Lantz, and American States instituted the present action to recover judgment amounts and defense costs from Aetna Life & Casualty Company, Geerts' insurance carrier. The court found that the insurance policy afforded Geerts no coverage as a matter of law. The court then granted Aetna's cross-motion for summary judgment. Finding no error, we affirm.

The original action for damages arose out of the following fact situation. In December 1966, Lantz employed Geerts, a florist, to flock a Christmas tree. Lantz testified that, when picking up and delivering the tree, Geerts represented that the flocking material was fireproof, that the tree did not need watering, and that lights could be placed safely on the tree. According to the stipulated facts, the chemical flocking substance actually increased the risk of fire and the resulting rate of combustion. On January 2, 1967, two weeks after delivery of the tree

to Lantz' home, the flocking ignited. The resulting fire substantially damaged Lantz' real and personal property and burned her severely. Lantz received partial compensation for her property damage from her insurance carrier, American States.

Lantz and American States sought to recover their losses from Geerts. Geerts supplied Aetna, his insurance carrier, with notice of Lantz' claim as well as copies of the complaint. However, Aetna refused to defend the suit, claiming Geerts' insurance policy provided no coverage of the accident. Lantz and American States recovered judgments from Geerts in the amounts of $12,310 and $7,690, respectively.

Geerts instituted the present action, claiming Aetna breached its contract to defend the original action. Lantz and American States joined the action against Aetna, as judgment creditors and third party beneficiaries of the insurance contract. Geerts, Lantz and American States filed a motion for partial summary judgment on the issue of liability. Aetna filed a cross-motion for summary judgment.

Geerts' florist operations were covered by a manufacturers' and contractors' liability policy with Aetna. The policy was in effect from June 1966 through June 1969. Under the standard policy, Aetna offered to insure Geerts for liability caused by accident and arising out of four possible types of hazards:

(1)  Premises — Operations;

(2)  Elevators;

(3)  Independent Contractors; and

(4)  Products (including completed operations).

Geerts elected to obtain coverage for liability caused by accidents arising only out of the "Premises — Operations" hazard; he paid a premium commensurate with that limited risk.

The relevant sections of the policy are set forth as follows:

### "INSURING AGREEMENTS

"I.   Coverage A — Bodily Injury Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily in-

jury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

Coverage B—Property Damage Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages "because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

"Definition of Hazards

Division 1—Premises—Operations—The ownership, maintenance or use of premises, and all operations.

Division 2—Elevators. . . .

Division 3—Independent Contractors. . . .

Division 4—Products (including completed operations)—(1) Goods or products manufactured, sold, handled or distributed by the named Insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named Insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named Insured or on premises for which the classification stated in division 1 of item 3 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2)   Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named Insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided, further, the following shall not be deemed to be 'operations' within the meaning of this paragraph:   (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the Insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of item 3 of the declarations specifically includes completed operations."

* * *

"INTERPRETIVE ENDORSEMENT — GENERAL LIABILITY

"Products (including completed operations) Hazard

"It is agreed that the word 'operations' as used in the Products (including completed operations) Hazard includes "any act or omission in connection with operations performed by or on behalf of the named Insured on the premises or elsewhere, whether or not goods or products are involved in such operations."

\* \* \*

"EXCLUSIONS

"This policy does not apply:  . . .

 (c) under division 1 of the Definition of Hazards, to (1) the Independent Contractors Hazard or (2) the Products (including completed operations) Hazard; . . ."

The court considered the policy and entered findings and rulings on the parties' motions for summary judgment. The court found that the accidental fire occurred after Geerts had completed flocking and delivering the tree and after the tree had been used by Lantz. The court further found that Geerts' activities with respect to the tree were completed operations, which had been completed prior to the fire. Under the facts before it, the court found no coverage under the insurance policy issued by Aetna to Geerts; therefore Aetna had no obligation to defend the original action or to pay the resulting judgment. Finally, after finding no insurance coverage as a matter of law, the court granted Aetna's motion for summary judgment.

On appeal, Geerts, Lantz and American States raise one central issue:[1] did Geerts' statements, made when delivering the flocked tree to Lantz, constitute a new operation or a negligent act which was covered by Geerts' contract of insurance with Aetna?

Appellants argue that Geerts' statements, which assured Lantz that the flocked tree was fireproof, needed no water, and could safely have

---

1. Because we hold that Aetna was entitled to summary judgment as a matter of law, we need not consider whether the court erred in using the term "allegations" rather than "findings" when referring to Lantz' uncontradicted testimony at the prior trial. The facts upon which the summary judgment was granted were uncontested in the present action.

lights, were insured acts under one of two theories: such representations constituted a new operation which was not completed prior to the fire in Lantz' home because of her reliance thereon; or such statements were independent acts of negligence covered by Division 1 — Premises — Operations (hereinafter referred to as "Premises Hazards") of the insurance policy.

Appellee Aetna maintains that Geerts' insurance policy covered accidents which occurred only on the premises of the floral shop or during ongoing operations.[2] However, in this case, the accident which caused damages occurred away from Geerts' premises, at a time *after* all operations (pick-up, flocking and delivery of the tree) had been completed. Such an accident was a hazard arising under Division 4 — Products (including completed operations) (hereinafter referred to as "Products Hazard") of the policy. Geerts failed to elect such coverage and pay an additional premium. Therefore, he was not entitled to insurance coverage of the accidental fire in Lantz' home.

## I.

### Other Jurisdictions

This court has not considered previously whether a negligent representation, which was made in conjunction with a sale or service and which contributed to an accident causing injury, is covered under a Premises Hazard clause.[3] However, numerous other courts have considered the same issue. Their decisions constitute two disparate lines of cases.

One line of cases holds that Premises Hazard coverage applies only to accidents occurring on the insured's premises or during closely-related, day-to-day business operations. *Cobbins v. General Accident Fire & Life Assurance Corporation, Ltd.* (1972), 53 Ill.2d 285, 290 N.E.2d 873;

---

2. Appellants argue correctly that the delivery operation itself, expressly excluded as an operation under Division 4, was covered as a Division 1 operation. However, such coverage does not automatically apply to accidents resulting from a failure to warn or a representation made during the act of delivery.

3. In other cases, the insured was either offered the option of purchasing coverage of Products Hazards, as here, or limited in coverage by a policy containing a Products Hazard exclusion. The dispositive reasoning is the same in both types of cases.

*Parma Seed, Inc. v. General Insurance Company of America* (1972), 94 Idaho 658, 496 P.2d 281; *Central Bearings Co. v. Wolverine Insurance Company* (1970), Iowa, 179 N.W.2d 443; *Ketona Chemical Corporation v. Globe Indemnity Company,* 404 F.2d 181 (5th Cir. 1968); *Tidewater Associated Oil Company v. Northwest Casualty Company* (1959), 264 F.2d 879 (9th Cir. 1959); *Smedley Company v. Employers Mutual Liability Insurance Company of Wisconsin* (1956), 143 Conn. 510, 123 A.2d 755. Thus, excluded from coverage are accidents which occur away from the premises of the insured after operations have been completed.

In some of these cases, plaintiffs sought coverage for a negligent act equated with the insured's failure to warn of potential dangers. Courts have held that such failure to warn is not covered as a Premises Hazard. *Oceanonics, Inc. v. Petroleum Distributing Company* (1973), La.App., 280 So.2d 874, adopted, La. 292 So.2d 190; *Green v. Aetna Insurance Company,* 397 F.2d 614 (5th Cir. 1968); *Inductotherm Corporation v. New Jersey Manufacturers Casualty Insurance Company* (1964), 83 N.J.Super. 464, 200 A.2d 358. As one court noted,

> "It is the occurrence of the accident itself and not of its negligent cause which is expressly made the determining circumstance." *Bitts v. General Accident Fire and Life Assurance Corporation,* 282 F.2d 542 (9th Cir. 1960).

Courts are reluctant to consider as a separate operation a representation closely related to a sale or service. Such a representation merges with the completed sale or service; coverage is excluded unless elected under a Products Hazard clause. *Cravens, Dargan & Company v. Pacific Indemnity Company, Inc.* (1972), 29 Cal.App.3d 594, 105 Cal.Rptr. 607, 612; *Oceanonics, supra,* 280 So.2d at 880. Other courts have recognized that most accidents (which lead to lawsuits) can be traced to some pre-existing negligence.[4] *Inductotherm, supra,* 200 A.2d at 364; *Tidewater, supra,* 264 F.2d at 882. Extension of coverage to all such accidents would

---

4. In *Roberts v. P. & J. Boat Service, Inc.,* 357 F.Supp. 729 (E.D.La. 1973), the plaintiff argued that negligence was not specifically excepted from the policy's coverage. However, the court noted that the term "arising out of" was broad enough to include injuries arising out of operations or products defective by insured's negligence. If we apply that holding to the case at hand, injuries arising out of a completed, defective, service operation would be excluded because of Geerts' failure to elect coverage under the Products Hazard clause.

render a Products Hazard exclusion meaningless in the many cases in which an insured recommends or makes representations about his products or services, or fails to warn of potential dangers.

Finally, other courst have considered situations in which the insured was involved primarily with service operations rather than products.[5] In many of these cases, courts have held that a contractor with only Premises Hazard coverage is not insured for accidents occurring after completion of his work. *Bouchard v. Hartford Accident and Indemnity Company* (1976), 369 Mass. 846, 343 N.E.2d 372; *Leakakos Construction Company v. American Surety Company of New York* (1972), 8 Ill.App.3d 842, 291 N.E.2d 176; *American Policyholders' Insurance Company v. McClinton* (1968), 100 N.J.Super.169, 241 A.2d 462. The coverage provided by a Premises Hazard clause extends only to the contractor's premises and to his operations in progress elsewhere. *Aetna Casualty & Surety Company v. Ammons* (1971), 125 Ga.App. 74, 186 S.E.2d 495. Courts have presumed that a contractor can secure insurance protection for completed operations by paying the applicable Products Hazard premium.

Some of these courts have taken the view that a policy such as the one at hand sets forth a clear distinction between Premises Hazard coverage and Products Hazard coverage.[6] A reasonable insured who fails to pay a premium for Products Hazard's coverage should realize that he is not covered for accidents occurring after he has ceased operations. *Haugen v. Auto-Owners Insurance Company* (1971), N.D., 191 N.W.2d 274; *Central Bearings, supra,* 179 N.W.2d 443; *American Policyholders', supra,* 241 A.2d 462.

In the other line of cases, the injury's cause, whether it be a negligent representation or a failure to warn, is determinative of coverage. Thus, courts have held that, where a negligent sale occurred on the insured's

---

5.   In the case at hand, Geerts was a florist. He operated a shop and greenhouse, where he sold various products; he also performed plant-related services (including deliveries) which involved off-the-premises operations. Thus, the decisions involving contractors have some application.

6.   This view recognizes that the separate coverages offered are mutually exclusive. The Premises Hazard coverage is not a general coverage, with exceptions carved out by the other offered coverages. Instead, the Premises Hazard coverage has limits which can be defined.

premises, a resulting off-premises injury was covered by a Premises Hazard clause. *Farm Bureau Mutual Insurance Company of Arkansas, Inc. v. Lyon* (1975), 258 Ark. 802, 528 S.W.2d 932; *Atkins v. Hartford Accident & Indemnity Company* (1967), 7 Mich.App. 414, 151 N.W.2d 846. Where a negligent representation was made in order to induce action, the operation was held to be not completed until the representation was acted upon. *Reed Roller Bit. Co. v. Pacific Employers Ins. Co.*, 198 F.2d 1 (5th Cir. 1952). A later court treated a negligent misrepresentation as a new operation, separate, complete and distinct from the original operation. *Waterman Steamship Corporation v. Snow*, 222 F.Supp. 892 (D.Ore. 1963).

In this second line of cases, negligence is treated as part of the general risk of doing business, rather than as part of a sale or service. *Cooling v. United States Fidelity and Guaranty Company* (1972), La.App., 269 So.2d 294. Courts have refused to exclude from general premises coverage a negligent representation or a failure to warn unless a specific exclusion is set forth in the policy. *Waterman, supra,* 222 F.Supp. 892; *Cooling, supra,* 269 So.2d 294.

Other courts have interpreted a Products Hazard clause as applying only to operations involving products sold or handled by the insured. Such a clause has been held not applicable to operations involving only services. *Insurance Company of North America v. Electronic Purification Company* (1967), 67 Cal.2d 679, 63 Cal.Rptr. 382, 433 P.2d 174; *Gehrlein Tire Company v. American Employers Insurance Company,* 243 F.Supp. 577 (W.D.Pa. 1964).

II.

Coverage of Completed Operations

Products Hazard insurance, which includes completed operations, is contained in many liability policies, either as an exclusion or as a separate coverage. Appleman noted the difference between ordinary liability insurance (Premises Hazard coverage) and products liability:

> "An injury or a loss may result while an activity is in progress, and prior to the completion thereof, either as the result of an act of negligence or an omission. That is what is embraced within the ordinary liability aspect of a public liability policy. But if the operation has been completed, and liability results thereafter either by

reason of a defect in merchandise or improper workmanship, that is called 'products liability' or 'completed operations', the protection of which can be purchased for a premium. Neither type of coverage is intended to supplant the other, nor would the premiums charged be adequate for that purpose." Appleman, *Insurance Law and Practice,* Volume 7A, § 4508, p. 98.

If our case involved an accident caused by a defective product or an improper flocking operation, our decision would be easily made — both of these instances come under a Products Hazard clause. However, the case at bar involves an accident (a fire) following service operations (flocking and delivering a tree) by the insured. There is no question that the fire occurred at a site removed from the insured's premises, at a time after the insured had completed his work on the tree. However, the proximate cause of the fire, as charged by Lantz, was not a defect in workmanship, but a negligent representation (or failure to warn) regarding the tree's flammability. We are required to determine whether such a representation constituted a completed operation under the terms of the insurance policy.

Before reviewing the language of the policy, we reiterate the fact that Geerts had elected to be covered only for Premises Hazards, and not Products Hazards. In this case, no issue was raised suggesting that Geerts had been misled regarding the extent of coverage he had purchased.[7]

Basic tenets of insurance law apply to our construction of the policy. An insurance policy is a contract between two parties; the law of contract rather than the law of negligence is controlling. *Ely v. State Farm Mutual Automobile Insurance Co.* (1971), 148 Ind. App. 586, 268 N.E.2d 316. A court must reasonably construe the language of the policy; it may not find coverage unless the language of the policy admits liability. *Town & Country Mutual Insurance Company v. Owens* (1968), 143 Ind.App. 522, 241 N.E.2d 368. An unam-

---

7. In this case, Geerts purchased insurance for his premises, a florist shop, where many of his operations were performed. The insurance also covered certain operations necessary to his business, such as deliveries. However, neither he (nor the insurance agent) could have been expected to have anticipated a need for insurance which would have covered the fire in Lantz' home, apparently caused by a defective flocking of a Christmas tree. Geerts' election to forego coverage of Products Hazards and pay a smaller premium was probably not unreasonable, given his circumstances.

biguous insurance policy must be enforced according to its terms, even those which limit the insurer's liability. A court may not extend the coverage delineated by the policy, nor may it rewrite the clear and unambiguous language of the policy. *Utica Mutual Insurance Company v. Ueding* (1977), 175 Ind.App. 60, 370 N.E.2d 373; *Ely, supra,* 268 N.E.2d 316. Finally,

> "the mere existence of a controversy as to the meaning of an insurance policy does not establish that such an ambiguity exists." *Taylor v. American Underwriters, Inc.* (1976), [170] Ind.App. [148], 352 N.E.2d 86, 89.

On the other hand, we recognize that anyone who buys insurance seeks to insure himself or his business against certain types of liability connected with his operations. Unless clear from its language, an insurance policy should not be interpreted to remove from coverage a risk against which an insured intended to protect himself. Thus, an exclusionary clause may not be read so loosely that it would effectively exclude coverage of *all* operations, particularly in cases where an insured purchases coverage primarily for off-the-premises operations.

A careful reading of the insurance policy at hand reveals that the Products Hazard clause encompasses more than those accidents caused by a product or an operation on a product, after relinquishment or completion. Paragraph (2) of Division 4 — Products (including completed operations) Hazard provides for coverage of accidents which occur away from the insured's premises after he has completed or abandoned the operation. The same clause specifically includes, as completed, an operation which was improperly or defectively performed. The Endorsement includes within the Products Hazard any act or omission in connection with an operation, whether or not a product was involved in the operation. Finally, the Exclusion specifically excludes a Products Hazard from Division I (Premises Hazard coverage).

Clearly, the Products Hazard clause applies to accidents which can be traced to some preexisting negligence of the insured, whether it be in improperly performing an operation or in making a negligent representation regarding the quality of the work performed. In this case, a tree belonging to Lantz was flocked by Geerts. The flocking operation increased the flammability of the tree. When Geerts delivered the

tree, he failed to warn Lantz of the increased danger of fire, and in fact, he represented that the tree needed no watering and could be trimmed safely with lights. Lantz' reliance on Geerts' statements led her to place lights on the tree. Later, a fire resulted.

We hold that Geerts' negligent representations would have been covered only under a Products Hazard clause. Geerts' delivery of a flocked tree to Lantz constituted a completed service operation. The representations made by Geerts (or his failure to warn) were acts arising out of that operation; these representations merged with the transaction to become part of the completed operation. Since completed operations were covered under a Products Hazard clause, the representations could not have been covered under the Premises Hazard clause.

Finally, the contention that the negligent representations initiated a new operation when Lantz relied thereon must fail. Again, the representations were closely related to the completed operation and had become a part thereof.[8]

Since Geerts had failed to purchase coverage for Products Hazards, he was not insured for the accidental fire in Lantz' home. Therefore, Aetna could not be obligated to pay the judgments recovered by Lantz and American States against Geerts.

### III.

### Duty to Defend

An insurer's duty to defend suits against its insured is determined by reference to the language in the insurance policy. Aetna's obligation to defend suits against Geerts was stated in the policy as follows:

"With respect to such insurance as is afforded by this policy, the Company shall:

(a)  defend any suit against the insured alleging such injury... even if such suit is groundless. . .; but the Company may make such in-

---

8.  The factual situation in the present case is completely dissimilar to that in *Waterman, supra,* 222 F.Supp. 892, which introduced the concept of a negligent representation as a new operation, separate and distinct from the original, completed operation. In that case, the insured had fumigated a ship hold. A longshoreman who was loading grain noticed a bitter odor. The insured then furnished a certificate of safety in order

vestigation, negotiation and settlement of any claim or suit as it deems expedient;"

According to the policy, Aetna was required to defend actions alleging injuries within hazard coverage "afforded by this policy." Few Indiana cases discuss the dimensions of this "duty to defend," an obligation which arises before all the facts can be determined at trial. However, a recent case states that the Indiana rule would appear to require an insurer to examine the allegations of the complaint and make a reasonably complete investigation of the facts, before it can deny coverage and consequent defense. *United States Fidelity and Guaranty Company v. Baugh* (1970), 148 Ind.App. 583, 257 N.E.2d 699.[9] The court in *Baugh* calls such practice "commonplace" among insurance companies in Indiana.

In the present case, Lantz' complaint alleged a set of facts involving a fire resulting from a Products Hazard, which was not covered by Geerts' policy with Aetna. Aetna's investigation of the circumstances of the fire revealed no facts which would have indicated that Aetna's policy with Geerts could be extended to cover the fire. Therefore, Aetna could not be held to have been required to defend Geerts against Lantz' suit.

The trial court properly granted Aetna's motion for summary judgment. The judgment is affirmed.

Affirmed.

Robertson, J. (by designation) concurs;

Hoffman, J., concurs.

NOTE — Reported at 379 N.E. 2d 510.

---

to induce longshoremen to load the hold. The latter operation (issuing the certificate) was sufficiently removed from the original operation (fumigating the hold) that the court chose to treat it as a new operation which was incomplete as long as workers relied upon it.

9.   A federal district court was not inclined to apply the "rule" in *Baugh. All-Star Insurance Corp. v. Steel Bar, Inc.,* 324 F. Supp. 160 (N.D.Ind. 1971). The federal court held that the insurance company could not look to the actual facts in determining whether it had a duty to defend. Instead, if even the allegations in the injured party's complaint were within the risk insured against, the insurance company had a duty to defend the action. This holding does not change the result in the case at bar; the allegations described a situation outside the risk covered by the policy.