Debra TUCKER, Individually and as the Personal Representative of the Estate of Rick Tucker, Appellant–Plaintiff,

v.

ROMAN CATHOLIC DIOCESE OF LAFAYETTE–IN–INDIANA, Most Reverend William L. Higi, Very Reverend Robert Sell, Reverend Dennis Goth, and Harry Metzger, Appellees–Defendants.

No. 18A05–0505–CV–252.

Court of Appeals of Indiana.

Nov. 23, 2005.

Rehearing Denied Feb. 23, 2006.

Adam M. Dulik, Dulik & Vigh, LLC, Indianapolis, for Appellant.

Bruce McSpadden, John C. Duffey, Stuart & Branigin LLP, Lafayette, for Roman Catholic Diocese of Lafayette.

Michael J. Quirk, Quirk & Rivers, Charles R. Clark, M. Edward Krause III, Beasley & Gilkison LLP, Muncie, for Harry Metzger.

## OPINION

KIRSCH, Chief Judge.

Debra Tucker appeals the trial court's dismissal of her suit against the Roman Catholic Diocese of Lafayette–in–Indiana, Most Reverend William L. Higi ("Bishop Higi"), Very Reverend Robert Sell ("Monsignor Sell"), and Reverend Dennis Goth

("Father Goth") (collectively the "Diocese").[1] On appeal, she raises numerous issues, the following of which we find dispositive: Whether the trial court properly dismissed Tucker's amended complaint for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6).

We affirm.

## FACTS AND PROCEDURAL HISTORY

When reviewing a T.R. 12(B)(6) motion to dismiss for failure to state a claim, this court accepts as true the facts alleged in the complaint. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 377 (Ind.2001). At all times relevant to the complaint, Bishop Higi, Monsignor Sell, and Father Goth were part of the Lafayette Diocese, which employed Metzger as a lay person to teach CCD classes to children, instruct lectors, assist with the direction of the children's choir, and serve as Extraordinary Eucharistic Minister.

Tucker alleges that in 1966 she was ten years old and attended CCD classes at St. Lawrence Parish ("Parish") in Muncie, Indiana. From 1966 through 1968, Metzger sexually abused Tucker by forcing her to perform oral sex on him and by engaging in sexual intercourse with her. These acts took place numerous times a month when Metzger would either remove Tucker from her CCD class or wait for her at a nearby park. Tucker did not report this sexual abuse for fear that Metzger would prevent her parents from receiving instruction in the Roman Catholic Church, or have her brother Rick, who was training to be a priest, removed from the seminary. Tucker also did not report the abuse because her mother suffered from depression that required frequent hospitalization.

In 1968, Tucker's family moved out of the Parish and she did not see Metzger again until he attended her parents' funerals in 1981 and 1993. In 1994, Metzger was part of a Parish group that painted Tucker's house. In 1999, Tucker began counseling with Father William Grady. In June of that year, Tucker and her brother met with Father Grady, one of Metzger's daughters, and the daughter's husband. During that meeting, Metzger's daughter admitted that Metzger had also sexually abused his daughters.

1. Harry Metzger filed a brief in this appeal and is listed in the caption. Even so, he is not a party to this appeal. On June 23, 2003, Tucker, individually and as personal representative of her brother's estate, filed a complaint against Metzger. In her complaint, Tucker alleged that she had incurred severe emotional distress, physical pain, and injury because Metzger had repeatedly molested her as a child. Metzger, moved for summary judgment on the basis that the statute of limitations had run, and the trial court granted Metzger's motion. Tucker failed to appeal Metzger's grant of summary judgment, instead, she filed a motion for leave to amend her complaint as it pertained to Metzger. *Appellant's App.* at 202. On March 8, 2005, the trial court denied Tucker's motion for leave to amend the complaint, and noted that the "Summary Judgment, as it relates to [Metzger] ends the litigation." *Appellant's App.* at 254. Therefore, Metzger is not a party to this appeal.

Likewise, the Estate of Rick Tucker ("Estate") is not a party to this appeal. In her original complaint, Tucker, acting as the personal representative of the Estate, raised various claims against the Diocese, including a claim for Rick's wrongful death. The Diocese filed a motion to dismiss for failure to state a claim, and the trial court granted the motion. On November 18, 2004, the trial court granted Tucker's timely motion for leave to amend her original complaint. The amended complaint restated Tucker's claims against the Diocese for breach of contract, negligence, and negligent and intentional infliction of emotional distress, and added a claim of promissory estoppel. Tucker's amended complaint, however, specifically omitted claims made on behalf of the Estate. The Estate, therefore, is not a party to this appeal.

Tucker saw Metzger twice in the spring of 2000. Thereafter, Tucker and her brother met with Monsignor Sell, Father Grady, and Tucker's personal therapist. At the meeting, Monsignor Sell promised Tucker that Metzger would not have any contact whatsoever with children at the Parish and that the Parish would strip Metzger of his duties as CCD instructor and Extraordinary Eucharistic Minister. Tucker, in turn, did not pursue legal action against the Parish, Metzger, or the Diocese. Tucker alleged, "Monsignor Sell's promise to plaintiff in mutual consideration for Plaintiff's not seeking legal recourse constituted a binding contract between the parties." *Appellant's App.* at 196. Monsignor Sell told Tucker in July 2000 that "everything was taken care of." *Appellant's App.* at 196. In August 2002, Tucker told her brother that the Diocese had taken no action to enforce its promise. A few weeks later, Tucker's brother committed suicide.

In her amended complaint, Tucker alleged that the Diocese materially breached the terms of their agreement, and that she had been damaged as a proximate result of that breach. Tucker asserted that the breach proximately caused her to suffer severe emotional distress.

Aware that her claim could be barred by the statute of limitations, Tucker argued that the Diocese's failure to report Metzger's abuse, as required by law, tolled the statute of limitations. She further alleged that the Diocese acted negligently in its hiring and supervising of Metzger. In March 2005, the trial court granted the Diocese's motion to dismiss Tucker's original complaint. Tucker timely amended her complaint, but, in March 2005, the trial court granted the Diocese's T.R. 12(B)(6) motion to dismiss Tucker's amended complaint for failure to state a claim. Tucker now appeals.

## DISCUSSION AND DECISION

Tucker contends that it was improper for the trial court to grant the Diocese's motion to dismiss her amended complaint with prejudice. A motion to dismiss tests the legal sufficiency of a complaint. *Ogden v. Premier Props., USA, Inc.,* 755 N.E.2d 661, 665 (Ind.Ct.App. 2001). In reviewing the dismissal of a complaint pursuant to T.R. 12(B)(6), the facts alleged in the complaint must be taken as true and only where it appears that under no set of facts could plaintiffs be granted relief is dismissal appropriate. *Watson v. Auto Advisors, Inc.,* 822 N.E.2d 1017, 1023 (Ind.Ct.App.2005), *trans. denied; Lawson v. First Union Mortgage Co.,* 786 N.E.2d 279, 281 (Ind.Ct.App. 2003); *Ogden,* 755 N.E.2d at 665. Additionally, such a motion should be viewed in the light most favorable to the non-moving party by resolving all inferences in the non-moving party's favor. *Watson,* 822 N.E.2d at 1023. Our review of a dismissal pursuant to T.R. 12(B)(6) is de novo, requiring no deference to the trial court's decision. *Id.; Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). If a complaint states a set of facts that, even if true, would not support the relief requested therein, we affirm the dismissal. *Watson,* 822 N.E.2d at 1023. We may affirm the grant of a motion to dismiss if it is sustainable on any theory. *Id.*

### I. Breach of Contract

In Count I of her amended complaint, Tucker claimed that the Diocese had breached its oral contract with her. She asserted that during a July 2000 meeting, "Monsignor Sell promised to ensure that Metzger would not have any contact whatsoever with children at the Parish and that the Parish would strip Metzger of his duties as a CCD and lector instructor and

Extraordinary Eucharistic minister." *Appellant's App.* at 195. She further claimed, "That Monsignor Sell's promise to [Tucker] in mutual consideration for [Tucker]'s not seeking legal recourse constituted a binding contract between the parties." *Appellant's App.* at 196. Tucker claimed that the Diocese took no action to enforce its contract and that, upon learning of this breach, Tucker suffered severe emotional distress.

■ Here, the trial court dismissed Tucker's claim reasoning that her oral contract violated IC 32–21–1–1, Indiana's Statute of Frauds, and, as such, could not be enforced. IC 32–21–1–1, in pertinent part, provides that a party may not bring an action to enforce a promise that is not to be performed within one year from the making of the promise unless the promise is in writing and signed by the party against whom the action is brought. The Diocese's promise was not in writing and could not be performed within one year. While the Diocese could have fired Metzger from its employ within one year, the Diocese also promised that "Metzger would not have any contact whatsoever with children at the Parish." *Appellant's App.* at 195. This promise had no stated time frame. Instead, it asserted the Diocese's ongoing duty to keep Metzger away from Parish children. Moreover, the only damages placed at issue by Tucker were her emotional distress damages. Such damages are not recoverable under a pure breach of contract theory. *Holloway v. Bob Evans Farms, Inc.,* 695 N.E.2d 991, 995 (Ind.Ct.App.1998) (citing *Plummer v. Hollis,* 213 Ind. 43, 11 N.E.2d 140 (Ind. 1937)). The trial court properly dismissed Tucker's contract action with prejudice.

## II. Promissory Estoppel

■■ In Count II of her amended complaint, Tucker added the new theory of promissory estoppel as a means to circum-vent the Statute of Frauds. Estoppel is a judicial doctrine sounding in equity. "Although variously defined, it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct." *Brown v. Branch,* 758 N.E.2d 48, 51–52 (Ind.2001).

Our Supreme Court has observed:

"[I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds."

*Id.* at 52 (quoting *Whiteco Indus., Inc. v. Kopani,* 514 N.E.2d 840, 845 (Ind.Ct.App. 1987) (citations omitted), *trans. denied* ).

Here, assuming without deciding that there was sufficient evidence to support the elements of promissory estoppel, the question remains whether Tucker's allegations to the trial court were sufficient to state a claim that Tucker suffered an " 'unjust and unconscionable injury and loss." ' *Id.* at 53 (quoting *Whiteco,* 514 N.E.2d at 845). In her amended complaint, Tucker alleged that her "loss" was caused by forbearance in filing legal actions against the Diocese in 2000, and that this forbearance allowed the statute of limitations to run, which precluded her from filing suit. *Appellant's App.* at 264. Tucker's "loss" was no loss at all because in 2000, without a specific claim of repressed memory to toll

the running of the statute of limitations, Tucker had no valid claims against the Diocese that she could relinquish.[2] Tucker suffered no unjust and unconscionable injury and loss. Tucker failed to state a claim of promissory estoppel upon which relief could have been granted. The trial court properly granted the Diocese's motion to dismiss the promissory estoppel claim.

### III. Negligence

 In Count III of the amended complaint, Tucker asserted a claim for negligence. She asserted that the Diocese was negligent in failing to take disciplinary action against Metzger, in failing to warn parents and children, including Tucker, about Metzger, and in failing to report Metzger to authorities as required by law. To the extent these claims were based on Metzger's abuse of Tucker from 1966 through 1968, they were barred by the two-year statute of limitations set forth in IC 34–11–2–4.[3]

 Furthermore, to the extent Tucker's claims allege that Metzger caused an injury to one other than Tucker, Tucker lacked standing to claim damages. "Standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit. To establish standing, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and that the injury is a result of the defendant's conduct." *Villegas v. Sil-*

*verman*, 832 N.E.2d 598, 604 (Ind.Ct.App. 2005) (citations omitted). Here, Tucker could not show that Metzger's injury to others caused her damage. Tucker's negligence claims were properly dismissed.

### IV. Negligent Infliction of Emotional Distress

 In Count IV of the amended complaint, Tucker asserted a claim for negligent infliction of emotional distress as follows: "as a proximate result of the negligence of the [Diocese], Plaintiff sustained an emotional trauma that is serious in nature and of a kind and extent normally expected to occur in a reasonable person ... [and that] Plaintiff was directly involved in the incidents that gave rise to her emotional trauma." *Appellant's App.* at 199–200. A claim for negligent infliction of emotional distress requires that the injured person suffered the injury either through direct impact or direct involvement. *See Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind.2000); *Ryan v. Brown*, 827 N.E.2d 112, 122 (Ind.Ct.App.2005) (where direct impact test is not met, bystander may nevertheless establish "direct involvement" by proving plaintiff actually witnessed or came on scene soon after death or severe injury of loved one). The only "direct impact" Tucker alleged arose from Metzger's time-barred batteries. Likewise, Tucker does not allege that her emotional distress arose as a bystander witnessing the injury of a loved one. *See*

2. Tucker also alleged that the Diocese's failure to report Metzger's abuse to the proper authorities constituted fraudulent concealment and tolled the statute of limitations. We agree with the trial court's analysis that it is not enough for Plaintiff to vaguely assert that *"as a child,* [she] repressed her memory of the sexual abuse," *Appellant's App.* at 261 (emphasis in original), especially when she reached majority in 1974 and had two years thereafter to file suit. To state a claim, Tucker should have concisely alleged that she regained her repressed memory less than two

years before she filed her suit in 2003. This would have been a difficult allegation to make in light of the fact that she admitted keeping the abuse a secret in 1968 for fear of reprisal, and apparently had enough memory of the abuse in 1999 to plan a meeting with Metzger's daughter.

3. IC 34–11–2–4, in pertinent part, provides: "An action for ... injury to person or character must be commenced within two (2) years after the cause of action accrues."

*Groves,* 729 N.E.2d at 573. Moreover, as explained above, any independent claims of negligence were dismissed for failure to state an actionable claim. Tucker failed to state a claim for negligent infliction of emotional distress. The trial court did not err in dismissing this count.

### V. Intentional Infliction of Emotional Distress

 Finally, in Count V of Tucker's amended complaint, she asserted that the Diocese was liable for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress under Indiana law, a complaint must allege conduct that is so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251, 1264 (Ind.Ct.App.2002). "It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind.1991).

Tucker claims that Metzger molested her as a child. The abuse Tucker suffered at the hands of Metzger, if as alleged, was extreme and outrageous. However, Tucker's claims against the Diocese allege, without more, that the Diocese's intentional actions constituted extreme and outrageous conduct. *Appellant's App.* at 200. Tucker fails to allege, however, that it was the Diocese's intent to emotionally harm Tucker. *See Cullison,* 570 N.E.2d at 31. Tucker has again failed to state a claim upon which relief can be granted.

Affirmed.

MAY, J., and ROBB, J., concur.