

FILED

Feb 13 2015, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Gregory W. Black | David J. Jurkiewicz |
| Gregory W. Black, P.C. | Nathan T. Danielsom |
| Plainfield, Indiana | Bose McKinney & Evans, LLP |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tracey M. Jaffri, | February 13, 2015 |
| *Appellant-(Defendant/Counterclaim Plaintiff Below),* | Court of Appeals Cause No. 32A01-1405-MF-236 |
| | Appeal from the Hendricks Superior Court |
| v. | Cause No. 32D02-1006-MF-102 |
| JPMorgan Chase Bank, N.A., | The Honorable David H. Coleman, Judge |
| *Appellee-(Plaintiff/Counterclaim Defendant Below).* | |

**Barnes, Judge.**

## Case Summary

Tracey Jaffri appeals the trial court's dismissal of her counterclaims against JP Morgan Chase Bank, N.A. ("Chase"), filed in response to Chase's mortgage foreclosure action. We affirm.

## Issue

The restated issue before us is whether the trial court properly dismissed Jaffri's counterclaims alleging Chase had acted improperly in failing to modify her mortgage after she went into default.[1]

## Facts

The facts as alleged by Jaffri are that in 2006, she purchased a home in Hendricks County through a mortgage and promissory note that eventually came into Chase's possession. After losing her job and subsequently becoming disabled in 2009, Jaffri fell behind on her mortgage payments. Jaffri and Chase then entered into discussions regarding possible modification of her mortgage terms under the federal government's Home Affordable Modification Program ("HAMP"), which was established in 2009 to help those in default on their mortgage to avoid foreclosure. Those discussions were not successful, despite

---

[1] Because of our resolution of this issue, we need not address Jaffri's claim that the trial court improperly denied her request for a jury trial.

Jaffri's contention that she was eligible for a HAMP modification and that she made multiple applications to participate in the program.

[4] On June 18, 2010, Chase filed a complaint to foreclose Jaffri's mortgage. On January 19, 2011, Jaffri filed an answer and two counterclaims, for breach of contract and breach of good faith and fair dealing. On December 5, 2013, Jaffri amended her counterclaims to allege negligence, breach of fiduciary duty, constructive fraud, and intentional infliction of emotional distress against Chase. Specifically, Jaffri alleged that Chase had failed to properly respond to and process her multiple HAMP requests, causing her emotional distress.

[5] At some point, Chase and Jaffri did enter into a modification of her mortgage terms, though it was not accomplished through HAMP, and Jaffri began repaying her mortgage under that modification.[2] On May 13, 2014, Chase's foreclosure complaint was dismissed upon its own motion. Jaffri elected to proceed with her counterclaims, however.

[6] Chase moved to dismiss Jaffri's counterclaims. The trial court granted Chase's motion to dismiss as to all four of Jaffri's counterclaims, without prejudice. Rather than attempt to amend her counterclaims, Jaffri has now appealed.

---

[2] Jaffri alleges that the terms of the modification were less favorable to her than a HAMP modification would have been, and also were less favorable than the original mortgage and promissory note.

# Analysis

Chase obtained dismissal of Jaffri's counterclaims via Indiana Trial Rule 12(B)(6), failure to state a claim upon which relief could be granted. "A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it." *Babes Showclub, Jaba, Inc. v. Lair*, 918 N.E.2d 308, 310 (Ind. 2009). We review a trial court's granting or denial of a motion based on Trial Rule 12(B)(6) de novo. *Id.* "When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor." *Id.* We will not affirm dismissal of a complaint for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.* Conversely, "[w]e will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1271 (Ind. Ct. App. 2000).

## *A. Negligence*

We first address dismissal of Jaffri's counterclaim against Chase sounding purely in ordinary negligence. To establish a negligence claim, a plaintiff must allege and prove: "'(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty.'" *Yost v. Wabash College*, 3 N.E.3d 509, 515 (Ind. 2014). (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). A defendant cannot be found

negligent where there is no duty to the plaintiff. *Id.* "Whether a duty exists is generally a question of law for the court." *Id.*

[9] Jaffri's negligence counterclaim specifically alleges, "[Chase] owed Ms. Jaffri a duty to service her mortgage loan with reasonable care and to address her HAMP modification applications with reasonable care." App. p. 50. This allegation seems to assert that Chase should be held liable in negligence for failing to perform its contractual duties in a reasonable manner. Jaffri also seems to claim entitlement to two different kinds of damages: pecuniary damages related to obtaining a loan modification that was less favorable than the terms available through a HAMP modification, and emotional distress damages related to the strain caused by Chase's dilatory conduct.

[10] To the extent Jaffri is claiming pecuniary harm caused by Chase's conduct, we note that the relationship between Jaffri and Chase is based on contract. Our supreme court has held, "[w]hen the parties have, by contract, arranged their respective risks of loss, . . . the tort law should not interfere." *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003). In other words, "[t]he rule of law is that a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." *Id.* Unless there is evidence of an independent tort that would have existed if there was no contract between the parties, they "should not be permitted to expand that breach of contract into a tort claim against either the principal or its agents by claiming negligence as the basis of the breach." *Id.* at 173. In essence, that is what Jaffri has done here: attempted

to claim that Chase negligently breached its contract with her. That is not an actionable claim. *See also Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 123-24 (Ind. Ct. App. 1992) (declining to recognize a new claim in Indiana for tortious breach of contract).

[11] With respect to Jaffri's claim to damages for emotional distress, it is well-settled that emotional distress damages are not recoverable for breach of contract. *Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596, 601 (Ind. Ct. App. 2005). As for any suggested claim of negligent infliction of emotional distress by Jaffri, her complaint fails to state the necessary elements of such a claim: that she sustained emotional trauma as the result of a direct physical impact or by witnessing or coming up the scene of the death or severe injury of a loved one. *See id.* at 602. Jaffri's negligence counterclaim fails to state any basis upon which she could have been granted relief under that theory, and the trial court properly dismissed it.

### B. Breach of Fiduciary Duty / Constructive Fraud

[12] Next, we jointly address Jaffri's counterclaims for breach of fiduciary duty and constructive fraud. "A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). The elements of constructive fraud are:

> "(i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of

> deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party."

*Yeager v. McManama*, 874 N.E.2d 629, 641 (Ind. Ct. App. 2007) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996)).

[13] This court has directly held that in breach of fiduciary duty and constructive fraud cases, "the parties cannot rely on a contractual relationship to create a duty. Contractual agreements do not give rise to a fiduciary relationship creating a duty." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000). More specifically, "the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence." *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046 (Ind. Ct. App. 2003). Additionally, "mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so. Absent special circumstances, a lender does not owe a fiduciary duty to a borrower." *Id.* at 1047; *see also Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 167-68 (Ind. Ct. App. 1998) (holding mortgage company had no duty to disclose information regarding private mortgage insurance cancellation to borrowers and, therefore, could not be liable to borrowers on claims of breach of fiduciary duty and fraudulent concealment).

[14] Here, Jaffri has failed to allege that there was anything "special" about her relationship with Chase that imposed a fiduciary duty upon it with respect to

negotiating a modification of the mortgage. Although Chase undoubtedly was the more sophisticated party in this scenario, that fact alone has never been held to be enough to form the basis of a breach of fiduciary duty or constructive fraud with regard to a bank or mortgage company's handling of a debt. *See id.* Jaffri failed to state any basis upon which she could have been granted relief under a claim of breach of fiduciary duty or constructive fraud, and the trial court properly dismissed those counterclaims.

### C. *Intentional Infliction of Emotional Distress*

Finally, we address Jaffri's counterclaim for intentional infliction of emotional distress ("IIED"). Unlike the other three counterclaims Jaffri filed, a plaintiff filing an IIED claim need not allege that the defendant owed the plaintiff a duty. Rather, the elements of IIED require proof that the defendant: (1) engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). "The requirements to prove this tort are 'rigorous.'" *Id.* (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)).

The requirements to establish a claim of IIED have been described as follows:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go

> beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt.). Whether "extreme and outrageous" conduct has occurred depends, in part, upon prevailing cultural norms and values. *Id.* If a complaint fails to contain sufficient factual allegations that the defendant intended to emotionally harm the plaintiff, the complaint may be dismissed for failure to state a claim upon which relief can be granted. *See Tucker*, 837 N.E.2d at 603.

[17] Even if everything occurred that Jaffri alleges—that Chase intentionally mishandled her HAMP applications and thereby caused her emotional distress—such facts would not establish an IIED claim. The unfortunate fact is that losing one's job and then facing foreclosure is stressful no matter the circumstances. Before HAMP was enacted, Jaffri's options for remaining in her home would have been even more limited than with the program in place. We are hard-pressed to say that any mishandling of this new program—even if intentional—constitutes the type of beyond-the-pale, "outrageous" conduct that may be covered by an IIED claim. As such, the trial court properly dismissed Jaffri's IIED counterclaim for failure to state a claim upon which relief could be granted.

[18] We conclude by noting that one of Jaffri's main contentions is, "[Chase] . . . intentionally did not dedicate the resources to HAMP modifications that were

necessary to properly comply with the federal program." App. p. 48. If there was a violation of federal law with respect to Chase's handling of Jaffri's HAMP requests, that is a matter better addressed by the U.S. Treasury Department as the administrator of that program. We cannot perceive that by enacting HAMP, the federal government intended for persons rejected for HAMP assistance to have a private cause of action against the mortgage lender or servicer, unless a contract actually was entered into under HAMP. A number of cases have been decided to that effect. *See, e.g.*, *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013) (holding that mortgage company's agreement to participate in HAMP did not establish duty owed to mortgagee seeking mortgage modification and affirming dismissal of complaint against mortgage company that failed to offer HAMP modification for breach of implied contract, negligence, negligent misrepresentation, fraud, and violation of state consumer protection laws); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) (holding that although mortgagee had viable claims against mortgage company that had entered into a temporary HAMP contract with the mortgagee but then failed to abide by that contract, mortgage company had no duty apart from contract to hire responsible and competent personnel to manage mortgagee's home loan); *Markle v. HSBC Mortgage Corp.*, 844 F. Supp. 172, 184-85 (D. Mass. 2011) (holding that bank's participation in HAMP did not establish a duty of care owed to mortgagee seeking modification); *Clay v. First Horizon Home Loan Corp.*, 392 S.W.3d 72 (Tenn. Ct. App. 2012) (holding HAMP guidelines did not provide borrowers denied modification with a private right of action for alleged failure to comply with

guidelines) (quoting *Marks v. Bank of America*, N.A., 03: 10-CV08039PHXJAT, 2010 WL 2572988 (D. Ariz. June 22, 2010)). Jaffri's counterclaims are contrary to a wealth of authority refusing to allow mortgagees to file private rights of action against a bank that allegedly failed to comply with HAMP.

## Conclusion

[19] None of Jaffri's counterclaims against Chase stated any actionable claim, and the trial court properly granted Chase's motion to dismiss all of them. We affirm.

[20] Affirmed.

Friedlander, J., and Pyle, J., concur.