In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 24-2888 & 24-2889

ATLANTA GAS LIGHT COMPANY and SOUTHERN COMPANY GAS,

*Plaintiffs-Appellees, Cross-Appellants,*

*v.*

NAVIGATORS INSURANCE COMPANY,

*Defendant-Appellant, Cross-Appellee.*

———————

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-2441 — **James P. Hanlon**, *Judge.*

———————

ARGUED SEPTEMBER 5, 2025 — DECIDED JANUARY 22, 2026

———————

Before ST. EVE, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* Atlanta Gas Light Company and South-
ern Company Gas (collectively, "AGL") hired United States
Infrastructure Corporation ("USIC") to locate and mark gas
lines that AGL owned throughout Georgia. Unfortunately,
USIC failed to mark a gas line in Homerville, Georgia, and, in
2018, a boring company struck it, leading to an explosion that
severely injured three women. The victims threatened suit,
and, in 2019, they, AGL, and USIC participated in a presuit

mediation to resolve the dispute. Through this process, the victims arrived at a settlement with USIC but were unable to come to terms with AGL. Eventually, however, AGL too settled with the victims, but only after they sued AGL in Georgia state court (the "Underlying Suits").

AGL's service agreement with USIC required USIC to obtain primary and excess liability insurance coverage that included AGL as an additional insured. And, because USIC's settlement with the victims exhausted its primary policy, AGL tendered the defense and indemnification of the Underlying Suits to USIC's excess insurer, Navigators Insurance Company ("Navigators"). Navigators, however, denied the requests on the ground that AGL was not an "additional insured" under the excess policy because, in its view, the Underlying Suits were premised solely on the conduct of AGL, not USIC.

Based on Navigators's failure to defend AGL at the mediation as well as its rejection of AGL's requests, AGL sued the excess insurer, alleging breach of contract, breach of fiduciary duty, and breach of its duty to deal with AGL in good faith. In response, Navigators filed a motion to dismiss, which the district court granted, but only as to AGL's claims premised on the insurer's failure to attend the mediation. Navigators subsequently requested summary judgment as to the remaining claims, which the district court granted in part; it dismissed AGL's breach of fiduciary duty and bad faith claims but not the breach of contract claim.

When assessing the contract claim, the court concluded that AGL in fact was an "additional insured" under the excess policy. This led AGL and Navigators to jointly seek the entry of a final judgment in AGL's favor as to the breach of contract

claim, reserving the right to appeal the court's "additional in-sured" determination as well as the other summary judgment rulings. Finding no error in the district court's analysis, we affirm.

## I

### A. The Policy

AGL owns gas lines throughout Georgia and had a service agreement with USIC to locate and mark them when neces-sary.

The service agreement required USIC to maintain primary and excess liability insurance coverage that included AGL as an "additional insured." Dkt. 113-2 at 19.[1] USIC's primary policy was issued by Zurich Insurance Company (the "Pri-mary Policy"). Its excess policy was issued by Navigators (the "Umbrella Policy").

As relevant here, the Umbrella Policy provides that:

1. We will pay on behalf of the insured and in excess of "underlying limits" those sums *the insured becomes legally obligated to pay* as damages for "loss" to which this insur-ance applies. This insurance applies only if:

> a. the "loss" is caused by an "event" that takes place in the coverage territory;

> b. the "loss" occurs during the "policy period;" and

> c. the "controlling underlying insurance" applies to the "loss."

---

[1] "Dkt." refers to the docket number in the district court record.

Dkt. 19-6 at 5 (emphasis added).

The term "insured" in the Umbrella Policy is taken from the Primary Policy, which defines "the insured" to include, in relevant part:

> [A]ny person or organization whom you are required to add as *an additional insured* on this policy under a written contract or written agreement. Such person or organization is *an additional insured* only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf, in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

Dkt. 19-7 at 2 (emphases added).

**B. The Explosion**

In August 2018, USIC failed to properly mark one of AGL's gas lines in Homerville, Georgia. A pipeline-boring company struck the gas line, causing the release of natural gas into a neighboring sewer line. This led to an explosion at a nearby café, severely injuring three women (the "Injured Parties").

**C. The Mediation**

The Injured Parties participated in a mediation with USIC and AGL in November 2019 before filing suit. Through that process, they reached a settlement with USIC that exhausted the limits of USIC's Primary Policy ("USIC Settlement"). As

part of the settlement, the Injured Parties agreed to release USIC and its insurers from any and all liability with respect to the accident, including "any vicarious liability that could arise from USIC's conduct, including any vicarious liability that may be imputed to AGL." Dkt. 36-1 at 2. Notably, this release carved out "any claim against AGL with respect to AGL's own conduct, including but not limited to any acts, omissions, or negligence of AGL." *Id.*

Unlike USIC, AGL was unable to come to an agreement with the Injured Parties during the mediation. Navigators did not attend the mediation, although AGL had requested it to do so.

**D. The Underlying Suits**

In December 2019, the Injured Parties sued AGL in Georgia state court. The Underlying Suits focused on AGL's own conduct, including its alleged failure to de-pressurize the gas lines. AGL tendered the Underlying Suits to Navigators for defense and indemnification.

Familiar with the claims and parties from the mediation, USIC's outside counsel, Traci Martinez, reached out to Navigators to "discuss any questions" and "to offer assistance … to the extent that would be helpful." Dkt. 89-1 at 7. Ultimately, Martinez prepared the denial letter that Navigators sent to AGL.

In the letter, Navigators stated that AGL would qualify as an "additional insured" under the Umbrella Policy only "with respect to liability for 'bodily injury' … caused in whole or in part by [USIC's] acts or omissions." Dkt. 36-2. Because, in Navigators's view, the Underlying Suits were "based *solely* and exclusively upon AGL's own conduct," without

"alleg[ing] *any* wrongdoing by USIC," it had no obligation to defend or indemnify AGL. *Id.* (emphases in original).

### E. Procedural History

That brings us to this lawsuit. In September 2020, AGL sued Navigators, alleging that the insurer breached the Umbrella Policy, violated its fiduciary duty to AGL, and acted in bad faith. In support, AGL pointed to Navigators's failure to attend the mediation as well as its refusal to defend and indemnify AGL. Ruling on Navigators's motion to dismiss, the district court dismissed the claims to the extent they were based on Navigators's conduct prior to the USIC Settlement but otherwise denied the motion. It reasoned that, because the Primary Policy had not been exhausted prior to the settlement, Navigators's duties toward AGL had not yet arisen.

Eventually, Navigators moved for summary judgment as to the remaining claims as well. The district court ruled in its favor as to AGL's fiduciary duty and bad faith claims, noting the lack of evidence that Navigators had acted with ill will when denying coverage. As to AGL's breach of contract claim, however, the district court concluded that AGL did qualify as an "additional insured" under the Umbrella Policy and denied the motion. The parties then settled this action, each reserving its right to appeal the rulings against it. Pursuant to the settlement, the district court entered final judgment in favor of AGL for $13.8 million.

AGL now appeals the dismissal of its claims that were premised on Navigators's conduct pre-USIC Settlement. AGL and Navigators cross-appeal their respective losses in the summary judgment order.

## II

As a threshold matter, the district court held that Indiana law governs this action, and neither party disputes this on appeal. Accordingly, "our role is to apply Indiana law as we predict the Indiana Supreme Court would today." *Mesco Mfg., LLC v. Motorists Mut. Ins. Co.*, 145 F.4th 705, 708 (7th Cir. 2025) (quoting *AXIS Ins. Co. v. Am. Specialty Ins. & Risk Servs.*, 111 F.4th 825, 830 (7th Cir. 2024)). Thus, before we dive into the particular claims in question here, a review of the governing Indiana law is in order.

### A. Breach of Contract

"Under Indiana law, the interpretation of an insurance policy is a legal question that turns on traditional principles of contract interpretation." *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1018 (7th Cir. 2022) (citing *Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 863–64 (Ind. 2022)). In Indiana, an unambiguous insurance policy is given "its plain and ordinary meaning" and "must be enforced according to its terms, even if those terms limit an insurer's liability." *Ebert*, 188 N.E.3d at 864, 865 (citing *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 169 (Ind.), *modified*, 938 N.E.2d 685 (Ind. 2010)).

"Typically, an insurer has a duty to defend its insured against suits alleging facts that might fall within the coverage." *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997) (applying Indiana law). "Whether an insurer has a duty to defend a particular lawsuit is determined by examining the nature of the underlying complaint." *Ebert*, 188 N.E.3d at 865 (citing *Transamerica Ins. Servs. v. Kopko*, 750 N.E.2d 1283, 1285 (Ind. 1991)). To carry out this inquiry, the "insurer must

look to the allegations in the complaint coupled with the facts known to the insurer after reasonable investigation." *Smith v. Progressive Se. Ins. Co.*, 150 N.E.3d 192, 202 (Ind. Ct. App. 2020) (citing *Am. States Ins. Co. v. Aetna Life & Cas. Co.*, 379 N.E.2d 510, 518 (Ind. Ct. App. 1978)).[2] And, like many other states, Indiana law recognizes that "[a]n insurer's duty to defend is broader than its duty to indemnify." *Ebert*, 188 N.E.3d at 865 (citing *Seymour Mfg. Co., Inc. v. Com. Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996)).

That said, "[n]o defense is required if the pleadings or investigation indicate that a claim is outside coverage limits or excluded under the policy*." Smith*, 150 N.E.3d at 202 (citing *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)). "When the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend." *Kopko*, 570 N.E.2d at 1285 (citing *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100 (Ind. Ct. App. 1980)).

---

[2] Indiana law as to whether "the nature of the underlying complaint" means only the complaint or includes facts otherwise reasonably known to the insurer is not a model of clarity. As we have recounted elsewhere, "[a] much-criticized (but never overruled) decision by the Indiana Supreme Court states that the 'duty to defend is determined solely by the nature of the complaint.' … This could be interpreted to mean that the insurance company only has to read the complaint. But that interpretation is not inevitable; 'nature of the complaint' might refer to the allegations of the complaint plus additional facts known or reasonably ascertainable by the insurer. This interpretation has support in Indiana law … reflecting the 'modern trend' in insurance law." *Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 781 (7th Cir. 2010) (citations omitted). Here, consistent with this reasoning, the parties agree that the "nature of the complaint" includes both the complaint and the facts known to the insurer after reasonable investigation.

**B. Breach of Fiduciary Duty**

Under Indiana law, a claim for breach of fiduciary duty requires proof of three elements: "(1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 639 (Ind. Ct. App. 2015) (quoting *Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010)).

Whether an insurer owes a fiduciary duty to its insured depends on the nature of the dispute. For example, when an insured asserts a first-party claim against the insurer, the relationship is "adversarial," and no fiduciary duty applies. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). But, when an insurer has a duty to defend the insured against the claims brought by a third party, the former owes a fiduciary duty to the latter. *See Posterity Scholar House, LP v. FCCI Ins. Co.*, 205 N.E.3d 1018, 1022 (Ind. Ct. App. 2023). And, of course, the existence of a duty is a prerequisite for a breach of fiduciary duty claim. *See McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607, 612 (Ind. 1992) ("Absent a duty, there can be no breach … or liability based upon the breach of duty.") (citing *Wilson v. Haimbaugh*, 482 N.E.2d 486, 487 (Ind. Ct. App. 1985)).

**C. Breach of Good Faith**

Indiana law recognizes "a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) (citing *Hickman*, 622 N.E.2d at 518, and *Vernon Fire & Cas. Ins. Co. v. Sharp*, 349 N.E.2d 173, 181 (Ind. 1976)). An insurer can breach that duty by, for example, "(1) making an unfounded refusal to pay policy proceeds; (2) causing an

unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Hickman*, 622 N.E.2d at 519.[3] Put another way, "[a]s a general proposition, '[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (quoting *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998)).

To successfully assert a claim alleging a bad faith denial of coverage, the insured must establish, by clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability. *Freidline*, 774 N.E.2d at 40 (citing *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992)). This is because not all claim denials give rise to claims of bad faith. *Hickman*, 622 N.E.2d at 520. For example, "a good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith." *Freidline*, 774 N.E.2d at 40 (citing *Hickman*, 622 N.E.2d at 520). By contrast, "an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty" to deal in good faith. *Hickman*, 622 N.E.2d at 520.

---

[3] AGL correctly notes that *Hickman* did not limit the duty of good faith to only those four scenarios. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. 2005) ("In *Hickman* we specifically declined to determine the precise extent of an insurer's duty to deal in good faith."). But in *Monroe,* the Indiana Supreme Court declined to expand the extent of this duty, including to the "manner of handling the claim." *Id.*

## III

### A. Motion to Dismiss

The district court granted Navigators's motion to dismiss AGL's breach of contract, breach of fiduciary duty, and breach of good faith claims to the extent they were grounded in Navigators's failure to defend AGL at the mediation. In short, the district court agreed with Navigators that it owed AGL no duties until the exhaustion of the Primary Policy, which only took place after the execution of the USIC Settlement.

We review the district court's dismissal of these claims *de novo*, "accepting plaintiffs' well-pleaded factual allegations as true and drawing all reasonable inferences in their favor." *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023) (citing *Kuebler v. Vectren Corp.*, 13 F.4th 631, 634–35 (7th Cir. 2021)). In addition to the allegations, we may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Id.* (citations omitted).

"[T]o defeat a motion to dismiss, a plaintiff must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires that a complaint offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or, put another way, "a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Here, the Umbrella Policy states, in relevant part:

2. If an aggregate limit of "controlling underlying insurance" [here, the Primary Policy] *is exhausted* by the payment of judgments or settlements to which this insurance applies, … this insurance will apply in place of the "controlling underlying insurance" until we have paid our applicable Limits of Insurance.

3. When paragraph 2. above applies, ending the "controlling underlying insurance" obligations to investigate and settle claims or defend suits against the insured, we have the right and duty to investigate claims and defend suits which seek damages to which this insurance applies.…

4. When paragraph 2. above does not apply, *we have the right, but not the duty, to participate in the investigation or settlement of any claim or the defense of any suit against any insured.*

Dkt. 19-6 at 5 (emphases added).

Simply put, the Umbrella Policy is triggered only after the limits of the Primary Policy are exhausted. Until that time, the Umbrella Policy provided Navigators with the right, but not the duty, to investigate and participate in the mediation process. Here, AGL does not contend that the Primary Policy was exhausted at the time it requested Navigators's assistance in the mediation. Therefore, under the plain and unambiguous text of the Umbrella Policy, Navigators had no duty to grant that request.

AGL contends that the policy's text is beside the point because, in its view, Indiana law imposes a duty of care on the insurer when it is on notice that the underlying primary

policy limits *would be* exhausted. And, given the severity of the Injured Parties' injuries, AGL argues, Navigators knew or should have known that Primary Policy's limit of $2 million would quickly be exhausted if the parties were able to reach a settlement at the mediation, thereby requiring Navigators's attendance. In support, AGL relies on *PHICO Insurance Co. v. Aetna Casualty & Surety Co. of America*, 93 F. Supp. 2d 982, 993 (S.D. Ind. 2000), but that case is readily distinguishable.

In *PHICO*, the excess insurer sued the primary insurer to recover sums that the excess insurer had paid in an underlying lawsuit against the insured because the primary insurer had negligently defended the insured. *Id.* at 986–88. The question before the court was whether the excess insurer could maintain an action against the primary insurer, *id.* at 990, which it answered in the negative because the excess insurer had waived its claims by acquiescing to the primary insurer's litigation strategy, *id.* at 993. It was in this context that the district court held that the excess insurer had a "duty to speak up to protect its own interests and that of the insured if it objected to that strategy," and that once it was on notice that the primary insurer's policy limits would be exhausted, the excess insurer had a "duty of care if not a duty to defend." *Id.* Thus, the "duty" that the *PHICO* court addressed was between the excess insurer and primary insurer and not between the excess insurer and the insured.

Furthermore, any argument that an excess insurer owes a duty of care to the insured prior to exhaustion of the primary insurer's limits is foreclosed by *Allstate Insurance Co. v. Dana Corp.*, where the Indiana Supreme Court unequivocally held that "the liability of the insurer under an excess insurance clause arises only *after* the limits of the primary policy are

exhausted." 759 N.E.2d 1049, 1062 (Ind. 2001) (emphasis added) (quoting *Ryder Truck Lines, Inc. v. Carolina Cas. Ins. Co.*, 385 N.E.2d 449, 452 (Ind. 1979)). Because Navigators owed no duties to AGL until after the USIC Settlement, AGL's contract and fiduciary duty claims were properly dismissed.

As for the bad faith claim, AGL insists that Navigators's duties prior to the USIC Settlement cannot be segregated from its duties post-settlement because AGL is challenging Navigators's alleged improper handling of the claim as a whole. But the complaint asserts that Navigators acted in bad faith "when it … failed to respond to AGL's request for defense and indemnification" leading up to the mediation, when it "failed to attend said mediation," and when it "failed to offer any monies, in advance of, or at the mediation to settle all claims." Dkt. 1 ¶ 39. And, as already explained, Navigators's duty towards AGL did not arise until after the USIC Settlement. Therefore, Navigators's refusal to attend the mediation cannot be held against it.

**B. Summary Judgment**

Turning to AGL's remaining claims, Navigators appeals the district court's determination that AGL was an "additional insured" under the excess policy. In turn, AGL appeals the district court's order granting Navigators's motion for summary judgment as to what remained of AGL's breach of fiduciary duty and bad faith claims.

We review the district court's summary judgment rulings *de novo*, "construing all conflicts in the evidence and drawing reasonable inferences for the nonmovant." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 804 (7th Cir. 2025) (citing *McDaniel v. Syed*, 115 F.4th 805, 821–22 (7th Cir. 2024)).

Summary judgment is appropriate where there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Christensen v. Weiss*, 145 F.4th 743, 751 (7th Cir. 2025) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016)).

### 1. Breach of Contract Claim

We first consider Navigators's argument that AGL does not qualify as an "additional insured" under the Umbrella Policy, which would be fatal to AGL's breach of contract claim. Pointing to the definitions of "insured" and "additional insured" in the relevant policies, Navigators contends that, in order for AGL to be an additional insured, its liability must be based on the acts or omissions of USIC or those acting on USIC's behalf. But, here, Navigators points out, the Underlying Suits were directed at AGL's own conduct rather than USIC's.

The Umbrella Policy states that its coverage applies to "the insured," which includes any person or entity insured under the Primary Policy. Dkt. 19-6 at 5. In turn, the Primary Policy defines "the insured" as the named insured and "additional insureds." Dkt. 19-7 at 2. It then goes on to explain who would qualify as an "additional insured":

> [A]ny person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only *with respect to liability* for "bodily injury", "property damage" or "personal and advertising injury" *caused, in whole or in part, by:*

*1. Your acts or omissions; or*

2. The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

*Id.* (emphases added).

Neither party argues that this text is ambiguous. And, under Indiana law, the word "cause[]" in this context means proximate cause. *See Scottsdale Ins. Co. v. Harsco Corp.*, 199 N.E.3d 1210, 1215–16 (Ind. Ct. App. 2022).

Thus, for AGL to qualify as an "additional insured," the liability the Underlying Suits seek to impose upon it must stem from injuries proximately caused "in whole or in part" by USIC's conduct. That is precisely what we have here. Indeed, in its own motion for summary judgment, Navigators acknowledged that "USIC … failed to locate and mark all of AGL's gas lines within the boring company's intended excavation path." Dkt. 108 at 4.[4] Because USIC's "acts or omissions" "caused, in whole or in part" the gas explosion, which harmed the Injured Parties, AGL is an "additional insured" for the purposes of the Umbrella Policy.

Resisting this straightforward reading, Navigators argues that, because the Settlement Agreement released USIC of any liability, USIC's acts and omissions cannot have been the

---

[4] Navigators argues this statement was not an admission. We are not persuaded. Navigators included this sentence in its own motion under the heading "Statement of Material Facts Not in Dispute."

"cause" of the harm for which AGL was sued. In a similar vein, Navigators contends that, because the Underlying Suits against AGL do not mention USIC at all, USIC's acts or omissions cannot be the proximate cause of the harm that is the subject of the lawsuits. Neither is persuasive.

Navigators's first argument confuses the release of USIC's liability with a determination that USIC did not proximately cause the injury that is the subject of the Underlying Suits. As we noted in *Apex Mortgage Co. v. Great Northern Insurance Co.*, a "[s]ettlement does not create a judicial ruling. Nor does it vindicate a plaintiff's theory of liability. Parties can settle for any number of reasons and the obligation to pay comes from the settlement itself (an agreement), not from one party's liability." 972 F.3d 892, 898 (7th Cir. 2020). As in *Apex*, the Settlement Agreement merely released USIC from any claims of liability; it did not determine one way or the other whether USIC had proximately caused the harm to the Injured Parties.

Navigators's reliance on *Scottsdale* and *Employees Mutual Casualty Co. v. Shivam Trading, Inc.*, 709 F. App'x 663 (11th Cir. 2018), is similarly misplaced. Both cases rested on a judicial determination that the primary insured owed no coverage. No such determination has been made here.

Second, Navigators is correct that the complaints in the Underlying Suits do not mention USIC by name. But, when assessing its duty to defend, the "insurer must look to the allegations in the complaint *coupled with the facts known to the insurer after reasonable investigation*." *Smith*, 150 N.E.3d at 202 (emphasis added) (citing *Am. States Ins. Co.*, 379 N.E.2d at 518). Here, it is undisputed that USIC's failure to mark the gas line was, at least, a partial cause of the resulting gas explosion. And, although AGL's conduct may have been a contributing

factor, "[t]here can be multiple proximate causes of a resulting event." *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 600 (Ind. 2006). Indeed, the policy recognizes this, requiring only that the relevant injury be caused "in whole or in part" by USIC.

The crux of both arguments appears to be Navigators's belief that AGL can only be an "additional insured" so long as USIC faces some liability for its actions in the Georgia lawsuits. But the policy is devoid of such language, and we will not "supply omitted terms while professing to construe the contract." *Knapp v. Est. of Wright*, 76 N.E.3d 900, 907 (Ind. Ct. App. 2017) (quoting *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993)).[5]

In sum, the Underlying Suits seek to hold AGL liable for injuries that were proximately caused (at least, in part) by USIC's conduct. Accordingly, AGL is an "additional insured" as that term appears in the Umbrella Policy.

### 2. Breach of Good Faith Claim

Turning to AGL's appeal, AGL raises several challenges to the district court's order granting summary judgment to

---

[5] It is for this same reason Navigators's reliance on the Additional Insured Endorsement's clause, which provides that coverage "[w]ill not be broader than that which you are required by the written contract or written agreement to provide such additional insured," is unpersuasive. Under the Additional Insured Endorsement, Navigators is not required to defend and indemnify AGL "for losses or damages caused by the sole negligence of [AGL], its agents or employees." And, as Navigators has already conceded, the harm to the Injured Parties was not caused solely by AGL.

Navigators as to AGL's claim that Navigators breached its duty of good faith.

First, AGL argues that Navigators intentionally violated the Umbrella Policy's Separation of Insureds clause, which provides that "this insurance applies … separately to each insured against whom claim is made or suit is brought." Dkt. 19-6 at 9. According to AGL, Navigators violated this provision by assigning a single claim number and a single adjuster to its and USIC's insurance claims. But the Separation of Insureds clause simply states that each insured is covered separately in the event of a claim or lawsuit. Nowhere does the text require Navigators to assign separate claim numbers or adjusters to the claims. And AGL has failed to cite any authority for this proposition.

Second, AGL contends that Navigators's failure "to do anything at any time to protect AGL's interests" constitutes bad faith. But Navigators's internal notes and correspondence with USIC indicate that it genuinely believed (as it still does today) that AGL was not an additional insured under its Umbrella Policy. And an insurer's denial of a claim (even if incorrect) is not sufficient, on its own, to establish a breach of the duty to exercise good faith. *See Hickman*, 622 N.E.2d at 520; *Monroe*, 829 N.E.2d at 976 (A good faith dispute can exist "even if it is ultimately determined that the insurer breached its contract.").

Undeterred, AGL cites to the claim file and insists that Navigators staunchly refused to communicate with AGL despite communicating regularly with USIC and its counsel. But nothing in the claim file supports the theory that Navigators purposefully ignored AGL once the Primary Policy was exhausted. For example, AGL offers no evidence that AGL

attempted to contact Navigators after the mediation or that Navigators intentionally avoided such contact.

Lastly, AGL argues that Navigators acted in bad faith by working with USIC's counsel to prepare the letter that it would send to AGL denying coverage. The timeline of events is worth reviewing.

On November 25, 2019, USIC's counsel, Traci Martinez, reported the result of the mediation to Zurich and Navigators. On February 4, 2020, Martinez wrote to Navigators and Zurich, "I wanted to connect us in an email as both Navigators and Zurich received identical letters from AGL requesting defense/indemnification…. I thought we could get on a call to discuss any questions you have and to offer assistance with drafting Zurich's and Navigators's responses to the extent that would be helpful." Dkt. 89-1 at 7. The next day, another counsel for USIC, David Helms, chimed in writing, "Here, the operative complaints filed against AGL quite clearly are based solely upon AGL's conduct. That fact alone renders AGL's claims baseless and likely should be the first point." *Id.* at 8. Then, on February 7, 2020, Martinez sent draft denial letters to the insurers, writing, "Per our call yesterday, see attached draft to assist you in your response." *Id.* at 9. Finally, on February 10, 2020, the Navigators claims adjuster generated a note reading, in part: "AGL now trying to tender the suits against them to USIC again via their counsel Thompson Hine. I spoke to USIC counsel and Zurich and we drafted identical denials." Dkt. 89-1 at 4.

AGL claims that these emails amount to evidence that USIC, Zurich, and Navigators actively colluded to deny AGL coverage. But AGL does not point to anything in these emails from which a reasonable factfinder could find that Navigators

acted with "a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Monroe*, 829 N.E.2d at 977 (quoting *Colley*, 691 N.E.2d at 1261). Nor does AGL provide any authority that coordinating denial letters in this manner constitutes bad faith under Indiana law.

What remains then is Navigators's nonfrivolous (albeit, incorrect) belief that given the USIC Settlement and the allegations in the Underlying Suit, AGL was not an "additional insured."[6] But, as discussed above, even an incorrect denial, without more, cannot be a basis for bad faith. Accordingly, summary judgment as to AGL's bad faith claim was appropriate.

**3. Breach of Fiduciary Duty**

Finally, AGL challenges the district court's grant of summary judgment in favor of Navigators as to its breach of fiduciary duty claim. To survive summary judgment, AGL must point to facts from which a reasonable jury could find the existence of a fiduciary relationship between it and Navigators, a breach of that duty, and harm. *Jaffri*, 26 N.E.3d at 639 (quoting *Farmers Elevator*, 926 N.E.2d at 79). Here, AGL premises its claim entirely upon its contention that Navigators acted in bad faith after AGL notified it of the Underlying Suits. But, for the reasons discussed, no reasonable jury could find that this was the case.

---

[6] AGL cites an expert report opining that Navigators acted in bad faith. The district court struck this report as irrelevant and conclusory. *See Atlanta Gas Light Co. v. Navigators Ins. Co.*, No. 1:20-cv-02441-JPH-TAB, 2023 WL 9058615, *6 n.5 (S.D. Ind. Sept. 22, 2023). Because AGL does not challenge this holding on appeal, it plays no role in our consideration.

*        *        *

For the foregoing reasons, the judgment of the district court is AFFIRMED.